Gelinas LLC v Hayes (2024 NY Slip Op 24273)

[*1]

Gelinas LLC v Hayes

2024 NY Slip Op 24273

Decided on October 23, 2024

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 23, 2024
Supreme Court, Bronx County

Gelinas LLC, Plaintiff,

against
Jacqueline Hayes, Defendant.

Index No. 800450/2021E

Plaintiffs 
DON ABRAHAM Firm Name:Bronster LLP Address:156 West 56th Street Suite 902, New York, NY 10019 Phone:3472464704 Service E-mail:dabraham@bronsterllp.com Other E-mails:donabraham.law@gmail.com
dabraham@bronsterllp.com
Defendant 
RALPH GREG BOWEN Firm Name:BOWEN, KENDALL & ASSOCIATES, LLP Address:801 E 222nd St Ste 1, Bronx, NY 10467-5107 Phone:(718) 547-3600 Service E-mail:bowenandkendall@gmail.com Other E-mails:ralphbowen@hotmail.com

Veronica G. Hummel, J.

In accordance with CPLR 2219 (a), the decision herein is made upon consideration of all of the papers filed by the parties in NYSCEF in connection with the motion of defendant JACQUELINE HAYES [Mot. Seq. 4], brought by Order to Show Cause, seeking an order [*2]pursuant to RPAPL § 993: 1) staying the partition sale of a property [FN1]
in the Bronx located at 1453 Teller Avenue ("the Residential Property"); enjoining plaintiff GELINAS, LLC. ("Gelinas") from selling, transferring or encumbering the Residential Property; 2) vacating plaintiff's partial summary judgment of partition and sale order; 3) determining the value of the Residential Property under the Heirs Act; 4) permitting Hayes as a co-tenant to exercise co-tenant's buyout option as set forth under the Heirs Act; and 5) such other and further relief as to the court may deem just, equitable and proper.
The central issue on the motion is whether this action for partition is governed by the traditional legal principles of partition or is subject to the special protections and procedures of the relatively new Uniform Partition Heirs Property Act ("the Heirs Act"). In order to categorize a partition action as a traditional or an heirs proceeding, the court must review the source of the title ownership of each owner. If a proceeding includes an owner that obtained title through inheritance, the property must be partitioned pursuant to the mandates of the Heirs Act.
Of import, the legal procedures, protections, and rights of the parties vary greatly depending upon whether the action is a traditional partition action or is subject to the Heirs Act. Under the traditional legal principles of partition, as set forth in RPAPL §§901-992, there are rigid procedures for determining the value of the property and whether a property is appropriately subject to partition, among other relief. Importantly, a traditional partition action often results in the property being sold at auction, sometimes at a significantly discounted price.
In contrast, the Heirs Act includes additional procedures and protections that are imposed in partition actions that involve individuals who acquired title through inheritance [FN2]
. These procedures are more stringent, grant the parties significant additional rights, and often provide for the sale of the partition property based on fair market value. Accordingly, in an action to partition a property like this one, the procedures and the rights of the parties differ dramatically based on whether or not the property is determined to be an heirs property.
Background/Procedural History
According to an affidavit, defendant Jacqueline Hayes (Hayes) met and became friends with decedent Charlesanna Adams (Adams) approximately sixty years ago in 1963. Over time, the friendship between Adams and Hayes developed into a romantic relationship.[FN3]

In 1969, the women acquired the Residential Property as joint tenants, with each owing a 50% interest in the property.[FN4]
The couple lived together in the house for over thirty-five (35) [*3]years until Adams died in June 2005. After Adams passed, Hayes remained in the home and continues to live there today. Hayes is now over 80 years old.
In addition to owning part of the Residential Property, in 1992, Adams purchased a two-family house located on the same block as the Residential Property at 1437 Teller Avenue ("the Rental Property"). The title to this property was solely in Adams' name. 
The court notes that, at the time that the women began to co-habituate, and in fact for their entire life together, the women were not entitled under New York State law, as a same sex couple, to marry. In fact, same sex marriage did not become legal in New York State until June 2011, well after Adams died in 2005.
When Adams died on June 23, 2005, she passed without a Will. Hayes alleges in this action that during their life together, Adams never mentioned any family members, no Adams family members ever visited the couple's home or the hospital, and no family members attended Adams' funeral.
After Adams passed in 2005, Hayes continued to live alone in the Residential Property and she still resides there to date. Hayes also allegedly maintained the Rental Property. Thirteen years after Adams' death, in June 2018, Hayes pro se filed a petition with the Bronx County Surrogate's Court wherein Hayes sought appointment as the administrator of Adams' estate
Hayes alleges that about this time she learned for the first time that Adams had two heirs at law, a niece named Valerie Galloway (the Niece) and a nephew named John V. Galloway, Jr. (the Nephew). It is undisputed that, by operation of law, as the sole distributes of Adams, the Niece and the Nephew each inherited 25% of the Residential Property, although it is not clear when the heirs became aware of that fact.
In an affidavit from the Niece, submitted in support of Gelinas' Motion #3, the Niece claims that she telephoned Adams at least ten times during the two years prior to Adams' death (from 2003-2005). The Niece alleges that she spoke to Hayes on several of those occasions. While averring that she called Adams when Adams was ill in 2005, the Niece claims that she was "shocked" to learn, after Hayes commenced a Surrogate's Court proceeding in 2018, that her aunt had died fourteen years earlier in 2005.
The Niece admits that she was notified of her aunt's death "through a company that monitors Surrogate filings", although she does not specify which company or attorneys contacted her. The Niece immediately challenged Hayes' standing in the proceeding and Hayes subsequently withdrew the petition in November 2019.[FN5]

Fifteen years after the death of Adams, on May 15, 2020, plaintiff Gelinas bought the Nephew's 25% share of the Residential Property for $15,000. Gelinas is a limited liability company which is in the business of property development.
Almost immediately, about six months later, Gelinas commenced the instant action for [*4]the partition and sale of the Residential Property and filed a Notice of Pendency [FN6]
on January 11, 2021. It is undisputed that on the date of the filing of this litigation by Gelinas, Gelinas only owned a 25% interest in the property (which it acquired for $15,000), Hayes owned 50% (and had been living in the house for over 50 years), and the Niece, a named party, was an owner of a 25% interest in the property that she acquired through inheritance. It is also undisputed that, at the time, the Residential Property was worth approximately $800,000.
The Court takes judicial notice that around the same time in 2021, a second litigation (Bronx County Index No. 808237/2021e) was filed involving a similar attempt to transfer or claim title to real property, contrary to Hayes' alleged ownership, based entirely on the Niece's and the Nephew's inherited interests ("the Second Action"). Promptly after the commencement of this action, Seabiscuit Realty, LLC., a real estate developer, bought the Niece's and the Nephew's interest in the Rental Property and the right to collect the rent paid by tenants on May 5, 2021. 
One month later, on June 16, 2021, Seabiscuit commenced the Second Action against Hayes claiming fraud, negligent misrepresentation, unjust enrichment, and General Business Law 349. Of note, Seabiscuit is represented in the Second Action by the same attorneys that represent Gelinas in this action.
In opposition to the developers' claims of ownership in the Second Action, Hayes alleges that she solely maintained, paid taxes on, and rented the Rental Property to tenants over the years from the time of Adams' illness until June 2021. Hayes therefore seeks a declaration that she holds full ownership of title to the Rental Property based on principles of adverse possession. The case remains in litigation [FN7]
before another justice, and accordingly Hayes is presently confronting two litigations regarding her interests in valuable real property that involve Adams' relatives and the laws of intestate.
In any event, in terms of this case, the original complaint filed by Gelinas named Hayes and the Niece as defendants. The pleading sets forth causes of action for: a declaration that it owns 25% of the property; a partition of sale of the property; and an accounting for rents, profits and sales proceeds. Gelinas seeks the forced the sale of the home and the pleading does not mention the Heirs Act, or its special procedures and protections. At the time of commencement, however, the Niece was indeed an heir as defined by the Act.
Hayes, represented by former counsel, filed an answer with counterclaims on March 18, 2021, denying the allegations, alleging affirmative defenses (lack of grounds for partition and right to first refusal to buy at fair market value), and asserting counterclaims (accounting of costs, maintenance and rental income, and right to purchase as majority owner). The right to purchase at fair market value, as opposed to auction, is a particular right under the Heirs Act. Gelinas filed a reply to the counterclaims on April 21, 2021, which included general denials of [*5]the allegations in the counterclaims.
Six days later, on April 27, 2021, which was only eleven months after Gelinas' purchase of the 25% interest in the Property, and one month after the joinder of issue, Gelinas moved for summary judgment [Mot. Seq. 1] ("the Motion for Summary Judgment of Partition"). In the notice of motion, Gelinas sought an order: granting summary judgment its favor; requiring Hayes to furnish Gelinas with an accounting of all rental income received with respect to the Residential Property; and, pursuant to traditional partition law RPAPL §911, appointing a Referee and directing the Referee to ascertain the rights, shares and interests of the parties in the property sought to be partitioned.
It is undisputed that on the date that the Motion for Summary Judgment for Partition was filed, the Niece, a named defendant, was an owner through inheritance, and therefore was an heir within the meaning of the Heirs Act.
Inexplicably, Hayes' attorney failed to oppose the motion.
On May 14, 2021, Gelinas acquired the Niece's share of the Property for $60,000.
By Decision and Order dated September 22, 2021, the Honorable Kenneth L Thompson, Jr. denied Gelinas' Motion for Summary Judgment of Partition [Mot. Seq. 1] on the grounds that Gelinas failed to submit proof of service of the motion upon Hayes. The decision also directed that Surrogate's Court proceedings be taken to identify the lawful heirs of Adams.
Rather than proceed to Surrogate's Court as directed, on October 7, 2021, Gelinas moved [Mot. Seq. 2] to renew and reargue the denial of the Motion for Summary Judgment for Partition ("the Renew and Reargue Motion"). Gelinas also sought to discontinue the action against the Niece after acquiring her share of the property. On the motion, Gelinas submitted new evidence in the form of an affidavit of service of the motion as well as a new affidavit by Hayes' brother stating that Hayes and Adams were not sisters. Gelinas also submitted a new affidavit from a genealogy expert opining that Hayes is not an heir of Adams.
Strikingly, Hayes' attorney did not submit opposition the motion [Mot. Seq. 2], which was marked submitted on November 21, 2021. This was the second time that the attorney failed to act to protect Hayes' rights and interests in the real property.
Hayes acquired new counsel in December, 2021.
On March 22, 2022, the Court issued a notice of a "Partition of Heirs Property Settlement Conference". This is a conference that is mandated by the Heirs Act. The Court scheduled the Partition of Heirs Property Settlement Conference for 10:00 a.m. on May 2, 2022. 
On March 22, 2022, Gelinas' counsel filed a letter addressed to the referee with the Court. In the letter, Gelinas' counsel argued that a Partition of Heirs Property Settlement Conference was not required because neither Gelinas nor Hayes inherited title to the property from a relative. Gelinas maintained that, therefore, the Heirs Act is inapplicable and the proceeding should proceed as a standard partition action. Gelinas did not file a motion as to the issue.
Thirteen days later, and before a response to the letter was filed by Hayes, by Decision and Order dated April 4, 2022, the Honorable Kenneth L. Thompson, Jr., granted Gelinas' Renew and Reargue Motion [Mot. Seq. 2], which sought to renew and reargue Gelinas' denied Motion for Summary Judgment of Partition [Mot. Seq. 1]. Again, no opposition had been filed by Hayes' former attorney to the Renew and Reargue Motion and it was granted on default.
In its decision, the court determined, on default, that Hayes was not Adams' heir, and implicitly that the Heirs Act was inapplicable, and held that the previous court referral to [*6]Surrogate's Court was rendered moot. The court therefore granted Gelinas' underlying Motion for Summary Judgment for Partition [Mot. Seq.1] on default but did not dismiss Hayes' counterclaims. The matter was referred to a referee for a standard partition hearing [FN8]
. 
Consequently, the Partition of Heirs Property Settlement Conference scheduled for May 2, 2022, was cancelled. 
On June 28, 2022, Referee Joyce Brown, Esq., issued a traditional partition report finding inter alia that Gelinas and Hayes each owned 50% of the property and directing that the house be sold as a whole unit ("the Referee's Partition Report"). Immediately, on July 15, 2022, Gelinas moved [Mot. Seq. 3] for an order confirming the Referee's Partition Report and issuing a judgment of partition and sale. 
Hayes, by new counsel, cross-moved for an order vacating the referee's report. In the motion papers, Hayes' attorney argued that former defense counsel was ineffective as a matter of law and challenged the report.
On January 6, 2023, the Honorable Kenneth L. Thompson issued a Decision and Order granting Gelinas' motion [Mot. Seq. 3] to confirm the Referee's Partition Report and denying Hayes' cross-motion. The Court directed the parties to Settle Order. 
On January 12, 2023, Gelinas submitted a proposed Judgment of Partition and Sale to the Court which was unopposed. A few days later, on January 27, 2023, the Court issued the Judgment of Partition and Sale. Eleven days later, on February 9, 2023, plaintiff served Notice of Entry of the Judgment. 
By email correspondence with the court attorney referee, starting on April 6, 2023, Gelinas' counsel communicated directly with the court referee to schedule some form of court conference. In the thread of emails, plaintiff's counsel twice asks whether the referee agreed that the Residential Property was not an heirs property. While Hayes' attorney was included on the email chain, Hayes' attorney did not respond to or affirm the contents of the emails by email or in the record.
On April 10, 2023, it appears that a court conference was held. In the relevant part of the email chain, on April 12, 2023, the referee states that "I recommended that the property is not heirs property and the auction date be set". The parties do not claim that the required procedures and considerations of the Heirs Act were a part of this court conference.
After Justice Thompson retired, this Court was assigned the action in late April 2023.
Two months later, on June 16, 2023, Gelinas filed a Notice of Sale. The Residential Property was noticed to be sold at auction on July 10, 2023. Based on the appraisal submitted by defendant dated June 24, 2023, the Residential Property had an appraised value of $805,000.
Before the sale date, on July 6, 2023, Hayes brought the instant motion [Motion Seq. 4] by Order to Show Cause. In this motion, Hayes seeks an Order staying the sale and an order, pursuant to RPAPL § 993 (the Heirs Act): vacating the judgment of partition and sale on the grounds that the Court failed to conduct a Partition of Heirs Property Settlement Conference and to provide other statutory protections, as is required by law; determining the value of the property; and allowing Hayes to exercise her buyout options under the provisions of the Heirs Act. The motion also sought "such other and further relief as to the court may deem just, [*7]equitable and proper".
On July 6, 2023, this Court signed Hayes' Order to Show Cause and issued a temporary restraining order staying the sale of the Residential Property pending the outcome of the instant motion. Gelinas opposes the motion. The action was conferenced by the court several time prior to the final submission of the motion.

 Analysis
At the heart of this case is the appropriate and fair disposition of the home of a same sex, unmarried couple that lived together in the house for almost 50 years. One challenging legal issue here is whether, based on the heirs relationship of an originally named party, the action falls within the special protections of the Heirs Act when, post-commencement, the originally named heir's interest was purchased by plaintiff.
As an initial matter, the Court finds that, although not explicitly labeled as such, the Notice of Motion and underlying motion papers [Mot. Seq. 4] give notice that Hayes seeks to vacate her former attorney's default on the Motion to Renew and Reargue [Mot. Seq. 2], and upon vacatur, seeks an order denying the motion.
Moreover, as the Notice of Motion and underlying papers include general prayers for relief, the motion is appropriately treated as such a motion to vacate. A court may grant relief not specifically requested in the notice of motion, pursuant to a general prayer for relief contained in the notice of motion or the papers, if the relief is warranted by the facts plainly appearing in the papers on both sides, and if the relief granted is not too dramatically unlike the relief sought, the proof offered supports it, and there is no prejudice to any party (see generally, Robert v Azoulay Realty Corp., 209 AD3d 781 [2d Dept 2022]; see Caesar v Metropolitan Transportation Authority, 229 AD3d 601 [2d Dept 2024]).
As Hayes' moving papers contain a general prayer for relief, this Court will, in its discretion, treat the motion as a motion to vacate a default. All of the relevant issues generated by this motion, the Motion to Renew and Reargue, and the underlying Motion for Summary Judgment of Partition are extensively briefed by the parties and were addressed at oral argument. Under the circumstances, based on the extensive litigation of the facts and legal arguments by the parties, the relief to be granted is not dramatically unlike the articulated relief sought. Importantly, as Hayes' former attorney defaulted on the previous motions [Mot. Seq. 1 and Mot. Seq. 2], the strong public policy in favor of resolution of a motion on the merits was not served.
Motion to Vacate the Default on the Motion to Renew and Reargue
Generally, to obtain vacatur of a default judgment under CPLR 5015(a) (1), a party must demonstrate a reasonable excuse for the default and the existence of a potentially meritorious defense or claim (Eugene Di Lorenzo, Inc. v A.C. Dutton Lumber Co., 67 NY2d 138 [1986]; see Kolodziejski v Jen-Mar Electric Service Corp., 2024 NY Slip Op. 04815 [1st Dept 2024]; Li Fen Li v Cannon, Co., 155 AD3d 858 [2d Dept 2017]).
Of import, the grounds set forth in CPLR 5015 are not exclusive and courts retain inherent discretionary power to vacate their own judgments for sufficient reason and in the interests of substantial justice (Woodson v Mendon Leasing Corp., 100 NY2d 62, 68 [2003]; NYCTL 1998-2 Trust v Bronx County Public Administrator, 213 AD3d 614 [1st Dept 2023]; Joyner v City Carter Leasing Inc., 211 AD3d 406 [1st Dept 2022]; Inwald Enters., LLC. v Aloha Energy, 153 AD3d 1008 [3d Dept 2017]; Gurin v Pogge, 112 AD3d 1028 [3d Dept 2013]; see generally MTGLQ Investors, L.P. v Vazquez, 2024 NY Slip Op. 05059 [1st Dept 2024]). This discretion is applicable in situations that involve "unique or unusual" circumstances that warrant [*8]such action (Matter of Cassini, 182 AD3d 13 [2d Dept 2020]; see NYCTL 1998-2 Trust v Bronx County Public Administrator, supra; Joyner v City Carter Leasing Inc., supra; Wade v Village of Whitehall, 46 AD3d 1302 [3d Dept 2007]; Soldovieri v Flack, 106 AD3d 717 [2d Dept 2013]; Soggs v Crocco, 247 AD2d 887 [ 4th Dept 1998]; see also Go Sweat, LLC v GRA Legal Title Trust 2013-1, U.S. Bank, National Association, 225 AD3d 486 [1st Dept 2024]; Cox v Marshall, 161 AD3d 1140 [2d Dept 2018]).
The determination of whether to vacate a default judgment rests within the sound discretion of the Supreme Court, although a disposition on the merits is strongly favored (Eugene Di Lorenzo, Inc. v A.C. Dutton Lumber Co., supra; Woodson v Mendon Leasing Corp., supra; SOS Capital v Recycling Paper Partners of PA, LLC, 220 AD3d 25 [1st Dept 2023]; Gerdes v Canales, 74 AD3d 1017 [2d Dept 2010]; Inwald Enterprises, LLC v Aloha Energy, supra). Accordingly, a motion to vacate a prior judgment is addressed to the court's sound discretion subject to reversal only where there has been a clear abuse of discretion (Inwald Enterprises, LLC v Aloha Energy, supra) and actions should be resolved on the merits when circumstances justify the same (see generally Eugene Di Lorenzo, Inc. v A.C. Dutton Lumber Co., supra; Gerdes v Canales, supra).
CPLR 5015(a)
Initially, the court finds that under the facts presented, Hayes demonstrates a reasonable excuse for the default on the Motion to Renew and Reargue. Whether there is a reasonable excuse for a default is a discretionary, sui generis determination to be made by the court based on all relevant factors, including the extent of the delay, whether there has been prejudice to the opposing party, whether there has been willfulness, and the strong public policy in favor of resolving cases on the merits (Singh v Sukhu, 180 AD3d 837 [2d Dept 2020]; Inwald Enterprises LLC v Aloha Energy, supra). 
Here, for reasons that cannot be explained, Hayes' former counsel failed to oppose two critical motions which resulted in depriving Hayes of significant real property rights on default. While there indeed may be instances where counsel's inaction or dilatory conduct may be imputed to the client (see e.g. Carillon Nursing & Rehabilitation Ctr., LLP v. Fox, 118 AD3d 933 [2d Dept 2014]; Gutman v. A to Z Holding Corp., 91 AD3d 718 [2d Dept 2012]), a review of the moving and opposition papers, together with the supporting documentation, reveals that Hayes never intended to abandon the defense to the case or her commitment to asserting her rights in this action (Singh v Sukhu, supra; Inwald Enterprises, LLC v Aloha Energy, supra; see e.g. Puchner v Nastke, 91 AD3d 1262 [3d Dept 2012]). Rather, Hayes reasonably believed that her attorney was actively pursuing and properly defending her valuable and important real property interests in the context thereof (Singh v Sukhu, supra; Inwald Enterprises, LLC v Aloha Energy, supra; Gage v Village of Catskill, 144 AD3d 1365 [3d Dept 2016]; see also Rekhtman v Clarendon Holding Co., Inc., 165 AD3d 856 [2d Dept 2018]; Abel v Estate of Collins, 73 AD3d 1423 [3d Dept 2010]).
In addition, while Gelinas has litigated this action at an aggressive pace, there is no showing that undue delay or prejudice will result from the vacatur of the default (see Zoom Tan, Inc. v Monforte, 227 AD3d 1237 [3d Dept 2024]; DaimlerChrysler Ins. v Seck, 82 AD3d 581 [1st Dept 2011]). In fact, there is no allegation of any prejudice to plaintiff and the strong public policy in favor of resolving cases on the merits is served by vacating the default (Singh v Sukhu, supra; Inwald Enterprises LLC v Aloha Energy, supra; Abel v Estate of Collins, supra; Gross v Johnson, 102 AD3d 921 [2d Dept 2013]). 
As for the second element of a meritorious defense, it is noted that the quantum of proof required in support of a motion to vacate a default judgment is not as great as that which is required to oppose a motion for summary judgment (see Williams v City of New York, 71 AD3d 605 [1st Dept 2010]; Zoom Tan, Inc. v Monforte, supra). A movant need only show a potential meritorious defense (DaimlerChrysler Ins. Co. v Seck, supra). 
Here, the multiple affirmative defenses alleged in the proposed answer and the legal arguments in the papers with regards to the potential applicability of the Heirs Act generate numerous relevant issues that, if resolved in defendant's favor, would sustain the alleged defenses. Of import, the argument that the Residential Property is, as a matter of law, subject to the Heirs Act's procedures and protections has been consistently raised and argued and, if correct, serves as a defense to the traditional partitioning of the Residential Property granted on default. Hence, Hayes' motion to vacate the default on the Motion to Renew and Reargue is appropriately granted.
Interests of Substantial Justice
In any event, the court finds that, the under the constellation of circumstances presented in this case, this action involves "unique or usual" facts that warrant the vacatur of the default judgment in the interests of substantial justice (Matter of Cassini, supra; Woodson v Mendon Leasing Corp., supra; NYCTL 1998-2 Trust v Bronx County Public Administrator, supra; Joyner v City Carter Leasing Inc., supra; Wade v Village of Whitehall, supra; Soldovieri v Flack, supra; Soggs v Crocco, supra; Inwald Enters., LLC. v Aloha Energy, supra; Gurin v Pogge, supra). Specifically, Hayes, who is 80 years old, was served with two lawsuits filed by significant real estate development companies within one year regarding property that was maintained by her with her life partner for decades and which she managed on her own for years after her partner's death. It is undisputed that Hayes has lived in the couple's residential home for over 50 years and the property is her home.
Faced with the lawsuit by property developers to force the sale of her home, Hayes hired an attorney to protect her interests who undisputedly completely abandoned her defense. Furthermore, the intense pace of the litigation fostered by plaintiff limited the time in which Hayes could even learn of and understand her counsel's repeated defaults. At the same time, Hayes' interests in the Rental Property were being aggressively challenged in another litigation that is also in an expedited litigation posture. Finally, as the central issue here is the value of real property, an irreplaceable asset, justice requires a determination of rights based on the law, not an attorney's malpractice or a default. Accordingly, the court finds that the interests of substantial justice weigh heavily in favor of vacating the default on the motion (Matter of Cassini, supra).
Motion to Renew and Reargue [Mot. Seq.2]
At its essence, the motion [Mot. Seq. 2] that was granted on default was founded in renewal. On the renewal motion, Gelinas submitted new evidence as to Hayes' ancestry and argued that it established, as a matter of law, entitlement to summary judgment and the partition of the Residential Property under traditional, and not Heirs Act, partition procedures.
On this motion, Hayes once again argues that the Heirs Act governs and the existing order of partition violates that law. In opposition, Gelinas contends that the Heirs Act is inapplicable because, as of now, none of the parties are "heirs" within the meaning of that statute.
The Uniform Partition of Heirs Property Act and Traditional Partition
As stated, the central issue to be determined here is whether RPAPL § 993 requires that the Residential Property be treated as an heirs property which is subject to the special rules and procedures of the Heirs Act or whether the traditional principles of partition govern the parties' rights. A joint tenant or tenant-in-common to real property may maintain an action to partition of the property. The interest may be "an estate of inheritance, or for life, or for years." (Donlon v Diamico, 33 AD3d 841 [2d Dept 2006]). Importantly, in all circumstances, the right to partition is not absolute and the remedy is always subject to the equities between the parties (Clarke v Clarke, 227 AD3d 659 [2d Dept 2024]).
RPAPL §§991-992 outline the procedures for a traditional partition. As relevant here, a traditional partition permits the sale of the property at auction, includes a standard partition settlement conference, does not include a priority right to purchase others' interests, and does not require a fair market sale.
RPAPL § 993, known as "the Heirs Act", was passed in 2019 to amend these traditional partition proceedings. This new law was intended to protect individuals who hold real estate held as tenants-in-common from predatory real estate speculators (Senate Mem in Support, New York Bill Jacket, 2019 S.B. 4865 Ch 596). The legislature memorandum provides:
"In recent years, predatory real estate speculators have taken advantage of New York's laws governing partition actions by purchasing a stake in a residential property - usually after a number of family members have inherited the property - and then using that ownership stake to file a partition action to dispossess the family of the property through a forced sale, often for pennies on the dollar relative to the actual value of the property. Lower- and middle-class families are particularly susceptible to these types of schemes, as they often do not engage in the kind of sophisticated estate planning that could prevent predatory partitioning actions."(id.).
Hence, the Heirs Act is designed to protect family-held lands from speculators who acquire properties by leveraging minority interests to force a partition sale. The intent is to allow relatives holding fractional interests to acquire full ownership or receive full value of their interest in legacy real property through additional service requirements, court conferencing, and appraisal requirements. The Heirs Act permits partition by sale only after all of the heirs have an opportunity to purchase the interests of the selling co-tenants. Only then may the court direct commercially reasonable sale, which need not be by auction.
So, in furtherance of these public policy concerns, the Heirs Act, among other things, specifically imposes procedural safeguards to protect tenants-in-common of heirs property. The statute requires that: 1) the court shall determine, after notice and the right to be heard, whether the property is heirs property and if the property is heirs property it shall be partitioned in accordance with the Act; 2) within sixty days of the filing of the RJI, a mandatory partition settlement conference be held; 3) the co-owner requesting partition must give notice to all of the other co-owners; 4) the court must order an independent appraisal to determine the property's fair market value; 5) any co-owner may exercise a right of first refusal to buy out the interest of the co-owner seeking partition for a proportional share of the court-determined fair market value; 6) if no co-owner elects to buy out the co-owner seeking partition, the court must first consider ordering a partition-in-kind if the property can be physically divided; and 7) if a partition-in-kind would be inappropriate, and the court orders a partition-by-sale, the property must be offered for [*9]sale on the open market at a price no lower than the court-determined value for a reasonable period of time and in a commercially reasonable manner (RPAPL § 993). The law contains additional service (posting) requirements, and additional court conferencing (the Partition of Heirs Property Settlement Conference), akin to the settlement conferences in mortgage foreclosure actions (see CPLR 3408).
Importantly by its express terms, the Heirs Act does not apply in all cases where individuals own real estate as tenants-in-common. In relevant part, the Heirs Act only protects "Heirs property" as expressly defined by its provisions:
(e) "Heirs property" means real property held in tenancy in common which satisfies all of the following requirements as of the filing of a partition action:
(i) there is no agreement in a record binding all of the co-tenants which governs the partition of the property;
(ii) any of the co-tenants acquired title from a relative, whether living or deceased;
(iii) the property is used for residential or agricultural purposes; and
(iv) any of the following applies:
(A) twenty percent or more of the interests are held by co-tenants who are relatives;
(B) twenty percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased;
(C) twenty percent or more of the co-tenants are relatives of each other; or
(D) any co-tenant who acquired title from a relative resides in the property.
(RPAPL § 993 [2] [e] [emphasis added]). In other words, the law applies to a limited class of partition actions where, on the date of commencement, a tenant-in-common has inherited his or her share of a property from a co-tenant that passed away.[FN9]
Applying the express language of the Heirs Act to the facts presented here, it is clear that the Residential Property qualifies as heirs property under the Act because the Niece was an heir at the time of the commencement of the partition action. When presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the Legislature. The text of the statute is the clearest indicator of legislative intent and the court should construe unambiguous language to give effect to its plain meaning (Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 7 [2019]; Smith as Trustee of Jay and Patricia Smith Irrevocable Trust v Smith as Trustee of Theodore, PS, 217 AD3d 1484 [4th Dept 2023]). It is also a well-established rule that statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous (Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group, LLC, supra).
Here, the Heirs Act expressly defines the meaning of the term "Heirs property" to include "real property held in tenancy in common which satisfies all of the following requirements as of [*10]the filing of a partition action", and where "any of the co-tenants acquired title from a relative, whether living or deceased" and "twenty percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased".
Thus, contrary to plaintiff's contention, a partition action falls within the Heirs Act if, on the date of commencement of the action, any of the co-tenants acquired title from a relative, whether living or deceased (RPAPL § 933 [2] [e] [iii]; Smith as Trustee of Jay and Patricia Smith Irrevocable Trust v Smith as Trustee of Theodore, PS, 217 AD3d 1484 [4th Dept 2023]). By specific statutory language, the categorization of the relevant property to be partitioned as a "Heirs Property" is determined on the date of the filing of the partition petition.
Here, Gelinas acquired the Nephew's 25% stake in the property for $15,000 and then filed the instant action against Hayes and the Niece seeking to force the sale of the home by partition. Based on the express language of the statute, therefore, this action falls within the purview of the Heirs Act because, at the time that the partition action was commenced, the named defendant Niece was a heir with a 25% of the ownership interest in the property. Accordingly, the partition action was required to proceed under the procedures set forth in the Heirs Act and the failure to follow said procedures was a violation of the statute that must be remedied.
To the extent that Gelinas may argue that its later, post-commencement, purchase of the Niece's interest removed the action from the Heirs Act's sphere, such a conclusion is in direct conflict with the express language of the law, and the express language will govern. There is no mechanism within the Heirs Act for the release of an action from its procedures whenever, sometime post-commencement, a party sells his or her interest.
In addition, any argument that the April 2023 court conference somehow satisfied the Heirs Act is without merit. Among other deficiencies under the Act, the conference was held after the entry of judgment and well beyond 60 days from the filing of the RJI.
Importantly, this interpretation of the express language of the Heirs Act and the legal consequences thereof are consistent with the recent amendment to the statute. Although not applicable to this proceeding , in July 2024, the Heirs Act was amended to add additional protections for tenants-in-common of heirs property. Effective July 19, 2024, subd. 12 and 13 were added prohibiting the purchaser from a protected heir from commencing a partition action (subd. 12) and establishing a hierarchical right of first refusal against any purchase offer (subd. 13), giving heirs in possession as a residence first right. Practice Commentaries, NY RP Act & Pro 993 (July 19, 2024). The provisions make clear that, under the Heirs Act, a purchaser such as Gelinas lacks standing to even commence a partition proceeding because the property was owned by an heir, and Gelinas acquired its shares "by means other than inheritance".[FN10]

Of note, this interpretation of the Heirs Act also serves the parties' interest in stability in litigation. To conclude the contrary would create uncertainty as to the procedures and the legal protections provided to the parties in an Heirs Act partition as the nature and governing law of [*11]the proceeding could be altered at any time during the ongoing litigation simply by a party's sale of its rights. Certainly, the application of the Heirs Act may affect the value of the property, the parties' decision to sell their interest, or even the decision to seek partition at all.
Accordingly, based on the express language of the Heirs Act, the court finds, after notice and the right to be heard was afforded to each party, that the Residential Property is heirs property subject to the procedures and protections of the Heirs Act. The property shall be therefore partitioned in accordance with guidelines and procedures set forth in the Act beginning with the prompt scheduling of a Partition of Heirs Property Settlement Conference.
Significantly, much of the narrative in this case resembles the type of unjust circumstances that the Heirs Act is designed to remedy. Hayes, lifetime partner to Adams, faces the forced sale of their family home due the purchase, at a nominal price, of distant relatives' interests in the home by a property developer. Gelinas, a real estate company, now seeks to use these relatively inexpensive purchased interests to force the property through a traditional partition proceeding to auction sale, a situation that is rife with the potential abuses specifically sought to be prevented by the Heirs Act. Hence, while Hayes is not strictly an heir under law, the application of the Heirs Act to the circumstances will not result in injustice, but will, in fact, serve the intention of the legislation.
In any event, the right to partition is not absolute and the partition remedy is always subject to the equities between the parties, and the court finds that the result reached herein serves equitable interests (Clarke v Clarke, supra). As discussed herein, the facts of the case generate significant questions of equity and fairness. Hayes and Adams acquired a house and resided in it together for over 50 years as a couple until Adams passed away. Hayes, who is in her eighties, continued to live alone in the home for over a decade more. It is undisputed that Adams' relatives never visited the home, visited Adams in the hospital or attended the funeral, and inherited their aunt's share of the property without ever having seen it. The low price paid by Gelinas ($75,000) for the right to partition a property that is worth over a $800,000, combined with the expedited pace of litigation of the case by Gelinas, raise concerns of inequity and unfairness. This constellation of circumstances generates concerns of whether a fair price would be obtained and equity would be served by an immediate traditional auction. Hence, based on the unique facts presented, even if the proceeding were to proceed as a traditional partition, a balancing of equities would weigh in Hayes' favor and would warrant additional safeguards to ensure that the parties receive a proper share of the property and its benefits (see Conroy v Conroy, 215 AD3d 630 [2d Dept 2023]; Lauriello v Gallotta, 70 AD3d 1009 [2d Dept 2010]; Colley v Romas, 50 AD3d 1338 [3d Dept 2008]; Haines v Haines, 254 AD2d 516 [3d Dept 1998]; Stressler v Stressler, 193 AD2d 728 [2d Dept 1993]; Ripp v Ripp, 38 AD2d 65 [2d Dept 1971], aff'd, 32 NY2d 755 [1975]; see generally, Coston v Greene, 188 AD3d 1147 [2d Dept 2020]; Tsoukas v Tsoukas, 107 AD3d 879 [2d Dept 2013]; Arata v Behling, 57 AD3d 925 [2d Dept 2008]).
The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any contention raised by the parties is not addressed by the Court, it is hereby rejected.
Accordingly, it is hereby
ORDERED that the part of the motion of defendant JACQUELINE HAYES [Mot. Seq. 4], brought by Order to Show Cause, that, in essence, seeks an order vacating the court's Decision and Order dated April 4, 2022 ("the Prior Decision") which granted, on default, [*12]plaintiff GELINIS LLC's Motion to Renew and Reargue [Mot. Seq. 2] is granted; and it is further
ORDERED that the Prior Decision is vacated ; and it is further
ORDERED that, upon vacatur, the Motion to Renew and Reargue [Mot. Seq. 2] is denied to the extent that the court finds that this partition action is subject to the Heirs Act and its mandated legal procedures; and it is further
ORDERED that, in light of the court's finding that the action is subject to the Heirs Act, this partition action shall now proceed in accordance with the procedures outlined in the Heirs Act; and it is further
ORDERED that the Judgment of Partition and Sale dated January 27, 2023, is vacated and the Clerk shall mark the Judgment of Partition and Sale vacated in all court records ; and it is further
ORDERED that this partition action shall promptly proceed to a Partition of Heirs Property Settlement Conference; and it is further
ORDERED that plaintiff shall serve a copy of this order with notice of entry on the Clerk managing Partition of Heirs Property Settlement Conferences by November 25, 2024, and upload an affidavit of service demonstrating said service by November 30, 2024, and said conference shall be promptly scheduled; and it is further
ORDERED that the court's Stay on the sale of the Residential Property pending the outcome of the instant motion shall be lifted upon the completion of the Partition of Heirs Property Settlement Conference; and it is further
ORDERED that defendant shall serve a copy of this order with notice of entry on the Judgment Clerk by November 25, 2024, and upload an affidavit of service by November 30, 2024; and it is further
ORDERED that the remaining part of the motion [Mot. Seq. 4] that seeks an order determining the value of the Residential Property under the Heirs Act and permitting a co-tenant to exercise co-tenant's buyout option as set forth under the Heirs Act and other relief is granted only to the extent that the action shall procced in accordance with the procedures of the Heirs Act; and it is further
ORDERED that the Clerk shall mark motion sequence 4 as decided in all court records.
The foregoing constitutes the Decision, Order Judgment of the court.
Dated: October 23, 2024
Bronx, New York
Hon. Veronica G. Hummel, A.S.C.J.

Footnotes

Footnote 1: Plaintiff's moving papers (Motion #1) describe the residence as a two-family house; however, the referee's report describes the property as a single-family residence.

Footnote 2: The Heirs Act supplements the general partition law (RPAPL §§901-992) and if a partition action is governed by the Act, the Act will replace the provision of the general partition statute that are inconsistent with the Act. RPAPL§§ 993(3)(a);(3)(b) and 993(3)(c).

Footnote 3: Hayes describes the relationship between the deceased and Hayes in an affidavit submitted in connection with Motion #2.

Footnote 4: Hayes describes the circumstances surrounding the purchase of the Residential Property in an affidavit submitted in support of the instant motion (Motion #4).

Footnote 5: In a decision dated September 16, 2021, Justice Thompson found that: "Hayes withdrew her petition in Surrogate's Court on the return date of a revocation proceeding. Plaintiff contends that Hayes' petition was fraudulent which led to the withdrawal. However, the order of Justice Nelida Malave-Gonzalez dated November 26, 2019, merely memorializes the withdrawal of the petition on the return date of a revocation proceeding. This Court cannot speculate as to the reason for the withdrawal of the petition and dismissal of Hayes' claim to being a distribute".

Footnote 6: The Notice of Pendency states that it is filed by "plaintiff Lightcap1, LLC.". There is no such party in this action.

Footnote 7:In the Second Action, third-party defendant YSLW Teller LLC, allegedly purchased the Rental Property from Seacrest taking out a 1.5 million-dollar mortgage and a 2.4 million dollar Building Loan Mortgage on the Rental Property, evidence that the rental property has significant value. As an alleged subsequent purchaser, YSLW is impleaded. 

Footnote 8:On May 18, 2022, the court issued an amended Order to correct a typographical error in the April 4, 2022, decision. 

Footnote 9:Effective July 19, 2024, subd. 12 and 13 were added to the Heirs Act prohibiting the purchaser from a protected heir from commencing a partition action (subd. 12) and establishing a hierarchical right of first refusal against any purchase offer (subd. 13), giving heirs in possession as a residence first right. Practice Commentaries, NY RP Act & Pro 993 (July 19, 2024).

Footnote 10: "12. Prohibition on initiation of a partition action. No partition action related to an heirs property may be initiated by a party that purchased or otherwise acquired their share or shares by means other than inheritance, and who did not inherit their share or shares directly from a person who was a co-tenant prior to the property becoming heirs property or from a co-tenant who was an heir thereto.